# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYLE WILLIAMS, | CASE NO. 1:03-cv-5389-LJO DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| A. CALDERON, et al., | (Docs. 119, 145) |
| Defendants. | |

I. Defendants' Motion for Summary Judgment

    A. Procedural History

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's fourth amended complaint filed on August 31, 2006 ("Amended Complaint"), against defendants Dr. Moor, Dr. Yin, Dr. O'Brien, Dr. Helmer, Nurse Klingenberg and Officer Waggoner for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. At the time of the events at issue, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and was housed at the California Correctional Institution in Tehachapi, California ("CCI").

On February 7, 2007, a suggestion of death for defendant Dr. Moor was filed. On June 16, 2008, the Court granted Plaintiff's motion to substitute the Estate of John Moor ("the Estate") as a party. On August 6, 2008, the Estate filed an Answer to the Amended Complaint.

On April 15, 2008, defendants Yin, O'Brien, Helmer, Klingenberg and Waggoner

("Defendants") filed a motion for summary judgment. After obtaining an extension of time, Plaintiff filed an opposition on July 22, 2008. Defendants filed a reply on July 28, 2008.

On September 11, 2008, the Estate filed a motion for summary judgment. Plaintiff filed an opposition on October 15, 2008 and the Estate filed a reply the same day.

B.  Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

C.     <u>Undisputed Facts</u>

1.     At all relevant times, defendant Wagoner was a Correctional Officer employed by CDCR and working at CCI.

2. At all relevant times, defendant O'Brien was employed by CDCR as a medical doctor and working at CCI.
3. At all relevant times, defendant Helmer was employed by CDCR as a medical doctor and working at CCI.
4. At all relevant times, defendant Yin was employed by CDCR as a medical doctor and working at CCI.
5. At all relevant times, defendant Klingenberg was employed by CDCR as a registered nurse and working at CCI.
6. On January 13, 2003, Plaintiff was seen by Dr. Yin for complaints of left low back pain.
7. According to the medical records Dr. Yin prepared on January 13, 2003, Plaintiff reported left low back pain for one month since a fight.
8. Plaintiff had x-rays of the chest and pelvis.
9. Plaintiff also reported numbness in the left buttock and posterior leg.
10. On examination, Plaintiff had slight low back tenderness with good range of motion.
11. Dr. Yin diagnosed low back strain/pain.
12. Dr. Yin ordered Tylenol and wanted to check on the results of the x-rays previously taken.
13. Dr. Yin contends Plaintiff did not report any other complaints or he would have written down those complaints in the medical records as is his normal custom and practice.
14. Dr. Yin prescribed Tylenol based on Plaintiff's complaints and his examination findings.
15. Dr. Yin did not believe stronger medicine or further diagnostic testing were indicated.
16. On January 27, 2003, Plaintiff was seen by Dr. O'Brien for complaints of severe lower back pain and sciatica.
17. According to the medical record Dr. O'Brien prepared on January 27, 2003, Plaintiff was seen for complaints of severe lower back pain with left sided lumbago and sciatica for approximately six weeks.
18. On examination, there was lumbar muscle spasm and range of motion was okay.
19. There was no costovertebral angle tenderness.
20. Dr. O'Brien recommended a lumbar x-ray and ordered urinalysis with culture and sensitivity

1       and he prescribed Motrin.

2  21.     On February 10, 2003, Plaintiff was seen by Dr. Helmer.

3  22.     Plaintiff reported left leg pain from buttocks to toes since an accident in 1994.

4  23.     Plaintiff reported increased pain with sneezing or cough.

5  24.     Based on the examination and Plaintiff's complaints, Dr. Helmer opined that Plaintiff may

6       have a left lumbo-sacral disc problem.

7  25.     Dr. Helmer ordered an MRI of the back and Ibuprofen for pain.

8  26.     The MRI was ordered to rule out a disc problem.

9  27.     Officer Waggoner has no medical training.

10  28.     On March 1, 2003, Plaintiff was diagnosed with L5 disc protrusion with nerve entrapment.

11       Plaintiff underwent a lumbar laminectomy at L5-S1 on March 1, 2003.

12  29. At all relevant times, Dr. Moor was employed as a physician by CDCR and worked at CCI.

13  30.     In 2003, Dr. Moor was the acting Chief Medical Officer ("CMO") at CCI.

14  31.     In August 2006, Dr. Moor retired from CDCR.

15  32.     Dr. Kashif Ali, the current acting CMO at CCI states that the position of CMO is primarily

16       administrative.

    D.     Discussion[1]

    1.     Claim Against Defendant Dr. Yin

Plaintiff alleges that Dr. Yin was deliberately indifferent to his serious medical needs on January 13, 2003 when he was experiencing severe pain in his lower back and lower extremeties. *See* Supplemental Pleading (Doc. 86), ¶ 2.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

---

[1] Plaintiff's complaint and opposition are verified and shall be treated as affidavits for purposes of the summary judgment rule where they are based on facts within Plaintiff's personal knowledge of admissible evidence, and not merely on Plaintiff's belief. Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

5

demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin at 1060 (internal quotations omitted)). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Dr. Yin argues that he is entitled to summary adjudication on the claim against him because he did not act with deliberate indifference to Plaintiff's serious medical needs. Dr. Yin saw Plaintiff on January 13, 2003 for complaints of low back pain resulting from a fight. DUF 7. Plaintiff had x-rays of the chest and pelvis; Plaintiff also reported some numbness in the left buttock and posterior leg. DUF 8-9. Dr. Yin diagnosed low back strain/pain and ordered Tylenol, stating that he wanted to check the results of previous x-rays. DUF 11-12. Dr. Yin alleges that Plaintiff did not complain of difficulty urinating and did not exhibit signs of atrophy. Declaration of Allen Yin, ¶¶ 6, 9. Dr. Yin states that there was nothing during Plaintiff's examination that was consistent with herniated disc and stronger medication or further diagnostic testing were not indicated. Declaration of Allen Yin, ¶¶ 10, 11. Dr. Yin contends that he never refused to examine or treat Plaintiff, and that he never intentionally or knowingly caused Plaintiff any pain, suffering or injury. Declaration of Allen Yin, ¶¶ 11, 12.

The Court finds that Dr. Yin has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that

a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In opposition to the motion, Plaintiff contends that when he saw Dr. Yin on January 13, 2003, he demonstrated that when he moved a certain way, his back would "pop." Opposition at 9:6-9. Plaintiff contends that Dr. Yin responded that Plaintiff was still young and could take hot showers. *Id*. at 9:9-11. Plaintiff points out that despite Dr. Yin diagnosing nothing more than "low back strain," just 45 days later, he was taken by ambulance to SJCH where he was diagnosed with L5 disc protrusion with nerve entrapment. Opposition, Exhibit C. Plaintiff contends Dr. Yin's failure to treat his condition resulted in further injury and prolonged pain.

It is undisputed that Dr. Yin examined and treated Plaintiff on January 13, 2003. Other than his own lay opinion, Plaintiff has not submitted any admissible evidence that Dr. Yin's course of treatment caused Plaintiff any further injury or was medically unacceptable. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted). While the care plaintiff received may not have been optimal, the Constitution does not require that prisoners receive optimal care, only that doctors and health care staff do not act in conscious disregard of an excessive risk to their health. Plaintiff has not submitted any evidence to suggest that Dr. Yin ignored the recommendations of other health care providers or failed to respond to Plaintiff's condition. The factual dispute regarding Plaintiff's complaint of difficulty urinating is not material because Plaintiff has not submitted any evidence regarding the significance of this information. Accordingly, Dr. Yin is entitled to summary adjudication on

Plaintiff's claim against him.

### 2. Claim Against Dr. O'Brien

Plaintiff alleges that Dr. O'Brien was deliberately indifferently to his serious medical needs on January 27, 2003 when he failed to properly diagnose his back condition. *See* Amended Complaint 9: 14-15.

Dr. O'Brien argues that he is entitled to summary adjudication of the claims against him because at all times, he provided appropriate care for Plaintiff. Dr. O'Brien examined Plaintiff on January 27, 2003 for low back pain and sciatica. DUF 16. Dr. O'Brien states that nothing during the examination was consistent with herniated disc. Declaration of Charles O'Brien ¶ 5. On examination, there was lumbar muscle spasm; range of motion was okay; and there was no costovertebral angle tenderness. DUF 18-19. Dr. O'Brien ordered a lumbar x-ray, urinalysis with culture and sensitivity and he prescribed Motrin. DUF 20. Dr. O'Brien contends that stronger medication and diagnostic testing beyond x-rays were not indicated. Declaration of Charles O'Brien, ¶ 6.

Plaintiff does not dispute that he was seen by Dr. O'Brien on January 27, 2003 for "severe lower back pain with left-sided lumbago and sciatica." Opposition at 10:13-17. Plaintiff contends that he complained of difficulty urinating and that is why Dr. O'Brien ordered a urinalysis. Opposition at 10:21-22. Plaintiff contends that he demonstrated the "popping" in his lower back to Dr. O'Brien and during the examination he was barely able to walk. Opposition at 11:3-6. Plaintiff argues the condition Dr. O'Brien diagnosed (left sided lumbago and sciatica) was important and worthy of treatment and Dr. O'Brien's failure to treat his condition resulted in prolonged pain. Opposition at 14:14-17. Plaintiff contends he should have been rushed to medical experts specializing in musculoskeletal and neurological was well as urological conditions or defendants should have at least consulted with an expert. Opposition at 14:20-24.

Plaintiff further contends that after his March 1, 2003 surgery, he was returned to CCI, with post-surgery physician orders/instructions for pain management and recommendations for physical therapy. Opposition at 12: 11-15. Plaintiff contends none of the neurosurgeon's recommendations were followed. *Id.*

Defendants have submitted evidence that Dr. O'Brien treated Plaintiff both prior to and after his surgery. Plaintiff contends that Dr. O'Brien should have ordered "specialty services" but he offers no evidence in support of his contention. Plaintiff does not dispute that Dr. O'Brien saw and treated him on January 27, 2003; Plaintiff simply disagrees with the treatment he was provided. The fact that Plaintiff's condition ultimately required surgery on March 1, 2003, does not, without more, establish that on January 27, 2003, Dr. O'Brien knew or should have known that Plaintiff had a disc herniation or that he was deliberately indifferent to Plaintiff's medical condition. There is a dispute about whether or not Plaintiff complained of difficulty urinating; however, as discussed, Plaintiff submits no evidence demonstrating the significance of the complaint.

Plaintiff also offers no evidence in support of his allegations that Dr. O'Brien ignored or refused to follow post surgical instructions. Plaintiff cites to an Appeal dated March 9, 2003 wherein he requested a transfer to another facility based on his medical condition. Opposition, Exhibit "H." However, in the Second Level Response dated August 5, 2003, Dr. O'Brien indicates that after surgery Plaintiff was scheduled for follow-up but due to road conditions following a snowstorm, was not transported. *Id.* The appointment was rescheduled and Plaintiff was transferred to Calipatria State Prison prior to the new appointment date. *Id.* Dr. O'Brien states that arrangements were made for Plaintiff to see an orthopedic specialist who would determine further treatment recommendations. *Id.* Plaintiff's evidence does not demonstrate that Dr. O'Brien ignored post surgical instructions. To the contrary, the Appeal response suggests that Dr. O'Brien took measures to ensure that Plaintiff was properly followed after his surgery.

Plaintiff has submitted no admissible evidence bringing any material facts into dispute. Accordingly, Dr. O'Brien is also entitled to summary adjudication on the claim against him.

        3.    <u>Claim Against Dr. Helmer</u>

Plaintiff alleges that Dr. Helmer failed to refer him to "Specialty Services" on February 10, 2003 and that the failure to do so subjected him to severe pain. *See* Amended Complaint at 5:8-14. Plaintiff contends that he complained of continued pain in his leg and lumbar spine area and difficult urinating. Opposition at 15: 7-9. Plaintiff contends that on February 22, 2003, just twelve days later, he collapsed when attempting to get out of bed and suffered paralysis from the waist down, requiring

9

1  immediate medical attention. *See* Amended Complaint, ¶ 15.

2  Plaintiff was seen by Dr. Helmer on February 10, 2003 with reports of leg pain from his
3  buttocks to his toes since an accident in 1994 and increased pain with sneezing or cough. DUF 22-
4  23. Dr. Helmer opined that Plaintiff may have a left lumbo-sacral disc problem and he ordered an
5  MRI; Dr. Helmer also ordered Ibuprofen for pain. DUF 24-25. Dr. Helmer contends that Plaintiff
6  did not complain of difficulty urinating and there was no indication that Plaintiff had a herniated disc
7  that required immediate hospitalization or surgery. Declaration of James Helmer, ¶¶ 4, 6.

8  There is no dispute that Dr. Helmer saw and treated Plaintiff on February 10, 2003. As with
9  the other doctors, Plaintiff's real contention is that Dr. Helmer's failure to refer him to a specialist
10 constitutes deliberate indifference to his serious medical condition. As explained in detail above,
11 this is not sufficient to support a claim of deliberate indifference. Plaintiff submits no evidence that
12 Dr. Helmer ignored Plaintiff's condition or failed to treat him. As a lay witness, Plaintiff may testify
13 about his symptoms. However, because plaintiff is not a medical expert, plaintiff may not interpret
14 those symptoms or opine about what the symptoms suggest. Plaintiff may not offer his lay opinion
15 regarding what medical conditions he suffered or that there was a medical need for surgery at the
16 time he saw defendant doctors. Indeed, when Plaintiff was admitted to the hospital on February 28,
17 2003, after a lumbar MRI, the examining physician noted,

> The patient has a large disc herniation at L5-S1, as well as atrophy of left calf muscles together with evidence of L5-S1 radiculopathy. He has failed to improve with conservative measures. Therefore, I recommend surgical intervention consisting of lumbar laminectomy at L5-S1 followed by L5-S1 disectomy and foraminotomy.

21 Opposition, Exhibit C. Plaintiff disagrees with the "conservative measures" they attempted for his
22 condition. Such disagreement is not sufficient to support a constitutional claim. Dr. Helmer is
23 therefore also entitled to summary adjudication of the claims against him.

24  4.  <u>Claim Against the Estate of Dr. Moor</u>

25  Plaintiff alleges that Dr. Moor was deliberately indifferent to his serious medical needs when
26 he failed to ensure that his post-operative medical needs were met. Amended Complaint ¶ 20.
27 Plaintiff alleges that on March 2, 2003, the neurosurgeon who performed his surgery issued a
28 Discharge Notification, directed to CCI's CMO, advising of Plaintiff's need for post-operative

1   physical therapy. *Id.* Plaintiff alleges that Dr. Moor failed to ensure that the orders were followed.
2   *Id.* Plaintiff alleges that Dr. Moor was aware that the post-operative care was vital to his full
3   recovery. *Id.*

4         The Estate argues that it is entitled to summary judgment because Plaintiff cannot establish
5   that Dr. Moor had any personal involvement in his medical care or that the alleged failure to receive
6   prompt physical therapy resulted in harm. *See* Plaintiff's responses to Estate of Moor's Interrogatory
7   No. 3, Exhibit C; Plaintiff's responses to Estate of Moor's Request for Documents Nos.1 and 2,
8   Exhibit D; Plaintiff's responses to Defendants' request for documents Nos. 2 and 3, Exhibit E. The
9   Estate submits the Declaration of Dr. Kashif Ali, the acting CMO at CCI, who states that the position
10  of CMO is primarily administrative and the CMO does not regularly provide care or treat inmates.
11  Declaration of Kashif Ali, ¶ 4-5. Defendants argue that Dr. Moor had no control over scheduling
12  appointments or how long it took a particular patient to be seen.

13        In opposition to the motion, Plaintiff argues that as CMO, Dr. Moor's duties were not
14  restricted to administrative functions. Opposition to Estate's Motion at 6:1-8. Plaintiff contends that
15  Dr. Moor was personally involved in his medical care both prior to and after his surgery. Opposition
16  to Estate's Motion at 3:17. In support of his contention, Plaintiff submits Appeal Log No. CCI-9-03-
17  00511, dated February 10, 2003, wherein he complains of back pain and requests x-rays and an MRI.
18  Opposition to Estate's Motion, Exhibit B. The appeal was partially granted at the first level, noting
19  that Plaintiff was transferred to San Joaquin Community Hospital where he underwent an MRI, was
20  seen by a specialist and underwent back surgery. *Id.* Dr. Moor signed the First Level Response on
21  April 1, 2003.

22        Plaintiff contends that on March 6, 2003, five days after his surgery, Dr. Moor personally
23  visited him in the Central Infirmary, after Plaintiff had completed his first post-operative shower.
24  Opposition to Estate's Motion at 7:7-10. Plaintiff also contends that on more than one occasion, he
25  apprised Dr. Moor of his lack of post-operative care. Opposition to Estate's Motion at 10:18-21.
26  Plaintiff submits ADA Appeal Log Number CCI-9-03-00811 wherein Dr. Moor indicates that
27  medical transfer to RJ Donovan is not recommended because Plaintiff had surgery and was doing
28

11

well post-surgery. Opposition to Estate's Motion, Exhibit C.[2] Plaintiff argues that in denying post-operative physical therapy, Dr. Moor violated several CDCR Health Care Service policies. Plaintiff contends that after surgery, he was transferred to a prison that was not ADA compatible and could not facilitate his physical therapy. Opposition to Estate's Motion at 14:14-19. Plaintiff contends he was still suffering post surgery which was caused by Dr. Moor's mistaken belief that his surgery was a success. Opposition to Estate's Motion at 14:14-22. Plaintiff alleges Dr. Moor's failure to provide post-surgical care resulted in post-surgery bowel problems, the need for post-surgical spinal epidural injections and a malfunctioning bladder. Opposition to Estate's Motion at 15:15-21, Exhibits I, J.

Plaintiff has failed to produce evidence establishing a factual dispute regarding Dr. Moor's personal involvement in his medical care or any conduct on the part of Dr. Moor that would constitute deliberate indifference to plaintiff's serious medical needs. The only evidence provided regarding Dr. Moor's involvement prior to surgery is the first level response to Appeal Log No. CCI-9-03-00511, signed by Dr. Moor on April 1, 2003, after plaintiff's surgery. Opposition to Estate's Motion, Exhibit B. At most, Dr. Moor's response, noting that Plaintiff's complaints were investigated and he underwent back surgery, establishes Dr. Moor's involvement at an administrative level. *See Id*.

Dr. Moor's second level response to plaintiff's ADA appeal also dated August 1, 2003 states that "[m]edical transfer to RJD is not recommended at this time as the appellant is doing well post surgery." This response does not, as plaintiff argues, demonstrate that Dr. Moor "decided" that plaintiff did not need physical therapy or that he was denied physical therapy. Indeed, the second level response on August 4, 2003 indicates that plaintiff was subsequently transferred to Calipatria State Prison to see an orthopedist specialist for further treatment recommendations. *See* Opposition to Estate's Motion, Exhibit C. The fact that plaintiff was not transferred to the institution he requested does not give rise to a constitutional claim and Plaintiff provides no evidence that Dr. Moor was involved in the decision regarding where to transfer him. Other than his own declaration, plaintiff provides no evidence demonstrating that the failure to receive physical therapy during a

---

[2] The Estate objects to this exhibit on the grounds that it is hearsay and was not produced during discovery. The objection is overruled in that the Estate cites to and relies on Exhibit C in the Reply. *See* Reply at 2:16-17

particular time frame resulted in harm or that his later physical problems were the result of his post surgical care. Plaintiff's characterizations of Dr. Flint's December 23, 2004 Consultation Report and Dr. Smith's May 20, 2004 Consultation Report are not accurate. These reports do not relate to or even discuss Dr. Moor or plaintiff's post-surgical care. *See* Opposition to Estate's Motion, Exhibits I, K.

Other than his own lay opinion, Plaintiff has not submitted any admissible evidence that Dr. Moor knew of and disregarded an excessive risk to plaintiff's health or safety or was deliberately indifferent to his serious medical needs. Dr. Moor is therefore also entitled to summary judgment.

5. <u>Claim Against Officer Waggoner</u>

Plaintiff alleges that defendant Officer Waggoner was his escorting officer on February 7, 2003, when his x-rays were performed and that he was present when the radiologist stated that Plaintiff was suffering from "atrophy" in his left leg. Amended Complaint at 4:23-27 - 5: 1-5. Plaintiff alleges that Officer Waggoner told him that "atrophy is the wasting away of tissue or part of a body organ which normally occurs during paralysis." *Id.* Plaintiff alleges that Officer Waggoner's failure to report to supervisory staff or appropriate medical staff, that he was suffering from atrophy in the left leg, with complaints of severe pain in the lumbar spine, constitutes deliberate indifference to plaintiff's serious medical needs. Amended Complaint at 6:23-27.

Officer Waggoner has no medical training. UDF 27. Officer Waggoner contends that at no time did he suspect that Plaintiff was suffering from atrophy or any disc related problem. Declaration of James Waggoner, ¶ 4. Officer Waggoner argues that Plaintiff cannot demonstrate that he had a serious medical need that Officer Waggoner knew about and disregarded.

Plaintiff presents no additional evidence in opposition to the motion. Assuming as Plaintiff alleges, that on February 7, 2003 Officer Waggoner overheard the radiologist state that Plaintiff suffered from atrophy in his left leg, Plaintiff has failed to demonstrate that Waggoner disregarded the condition or interfered with Plaintiff's treatment. It is undisputed that Plaintiff saw Dr. Helmer on February 10, 2003 for his condition. Plaintiff presents no evidence that between February 7, 2003 and February 10, 2003, Officer Waggoner should have or could have taken any action regarding Plaintiffs medical condition or that earlier treatment would have made any difference. To the extent

1  Plaintiff alleges that Officer Waggoner delayed his treatment, Plaintiff must set forth admissible
2  evidence showing that the delay led to further harm. McGuckin, 974 F.2d at 1060 (internal citation
3  omitted). Plaintiff has not done so.

4        6.     Claim Against Nurse Klingenberg

5  Plaintiff alleges that between February 25 and 26, 2003, Nurse Klingenberg, at the direction
6  of Dr. Helmer, dispensed and supervised Plaintiff's hourly and daily injections of morphine as
7  treatment for his pain. Amended Complaint at 7: 17-20. Plaintiff alleges that Nurse Klingenberg
8  expressed her opinion that Plaintiff was faking because no abnormalities were revealed by the
9  February 7, 2003 x-ray. Amended Complaint at 6:15-17. Plaintiff contends that Nurse Klingenberg
10 insisted that Plaintiff could walk and refused to fill his water-pitcher leaving him without water.
11 Amended Complaint at 6:17-22.

12 Defendants argue that Nurse Klingenberg was not deliberately indifferent to Plaintiff's
13 medical needs because there is no evidence that Plaintiff suffered any dehydration or other malady
14 as a result of her alleged failure to retrieve water for Plaintiff. Nurse Klingenberg contends that at
15 no time did she fail or refuse to give Plaintiff medical treatment she believed he needed and at no
16 time did she know of and disregard an excessive risk to his health or safety. Declaration of Sherry
17 Klingenberg, ¶¶ 5-7.

18 Plaintiff's claim against Nurse Klingenberg arises out of allegedly unconstitutional conditions
19 of confinement, in violation of the Eighth Amendment. "The Eighth Amendment's prohibition
20 against cruel and unusual punishment protects prisoners not only from inhumane methods of
21 punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d
22 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive
23 and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting
24 Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "What is necessary to show
25 sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim
26 at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992). "[E]xtreme deprivations
27 are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9
28 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the

14

1  penalty that criminal offenders pay for their offenses against society, only those deprivations denying
2  the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an
3  Eighth Amendment violation." Id. (quotations and citations omitted).

4  Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison
5  officials may be held liable only if they acted with "deliberate indifference to a substantial risk of
6  serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Thus, a prison official may be
7  held liable under the Eighth Amendment for denying humane conditions of confinement only if he
8  knows that inmates face a substantial risk of harm and disregards that risk by failing to take
9  reasonable measures to abate it. Id. at 837-45. Mere negligence on the part of the prison official is
10 not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at
11 835; Frost, 152 F.3d at 1128.

12 Assuming the truth of Plaintiff's allegations concerning Nurse Klingenberg's failure to fill
13 Plaintiff's water pitcher on February 25-26, 2003, Plaintiff has not presented any evidence that she
14 "had actual knowledge" of a serious risk of harm to Plaintiff and deliberately disregarded that risk.
15 See Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000). Being housed in a cell without a full water
16 pitcher for two days is not, without more, a condition so inhumane that it constitutes a violation of
17 the Eighth Amendment. There is no evidence that Nurse Klingenberg knew Plaintiff was in dire
18 need of drinking water but opted not to intervene or that the denial of a full water pitcher
19 contradicted any part of his medical treatment. Nurse Klingenberg's alleged statements about
20 Plaintiff's condition do not change the result. Mere verbal harassment or abuse, including the use
21 of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief
22 under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

23 Absent the submission of evidence demonstrating that Plaintiff was subjected to an
24 objectively substantial risk of harm to his safety or health and Nurse Klingenberg possessed the
25 requisite mental state of deliberate indifference, there are no triable issues of fact and Nurse
26 Klingenberg is also entitled to summary adjudication on the claim against her.

27 E. Conclusion

28 For the foregoing reasons, the Court finds that Plaintiff has not met his burden of setting forth

admissible evidence raising triable issues of material fact, and all of the Defendants are entitled to judgment as a matter of law on the claims against them.  Accordingly, based on the foregoing, it is HEREBY ORDERED recommended that Defendants' motion for summary judgment, filed April 15, 2008 and the Estate's motion for summary judgment filed September 11, 2008 be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (3) days after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **November 15, 2008**             /s/ Dennis L. Beck
                                      UNITED STATES MAGISTRATE JUDGE